**CHARLES H. TOMPKINS COMPANY, Appellant,**

v.

**Louis GIROLAMI, Sr. and Mary Ann Girolami, Appellees.**

**No. 88–435.**

District of Columbia Court of Appeals.

Argued Nov. 14, 1989.

Decided Dec. 8, 1989.

---

James M. Heffler, for appellant.

Michael H. Feldman, with whom Christopher V. Tisi was on the brief, for appellees.

Before NEWMAN, BELSON and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

 In this appeal from a jury verdict in a negligence action, Charles H. Tompkins Company (Tompkins) raises several issues, only one of which merits more than conclusory discussion. Tompkins contends the trial court erred in permitting an economics expert to testify as to average future work-life expectancy based on work-life tables published by the U.S. Department of Labor. We find no error and affirm.[1]

Girolami was injured in an accident on a job site when he was struck by concrete debris that fell from an upper floor of the building under construction. He suffered aggravation of a pre-existing back condition. Tompkins conceded liability, but contested Girolami's claim that the injuries in this accident permanently incapacitated him from work.[2]

As part of his proof of damages, Mr. Girolami called as an expert witness, Dr. Richard J. Lurito, an economist. Dr. Lurito testified over objection that, based on the Department of Labor work-life expectancy tables, an average person, who was Girolami's age at the time of the accident, had a future work-life expectancy of 14.1 years.[3] Tompkins contends on appeal, as it did at trial, that it was error to permit testimony of *average* future work-life expectancy; Tompkins contends the testimony should have been restricted to the particular work-life expectancy of Girolami, as it was prior to this accident.

A similar contention has been rejected by the United States Court of Appeals for the District of Columbia Circuit in a decision binding on us. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971) (Decisions of the

---

1. Tompkins also argues that Girolami failed to establish that the damages he claimed proximately resulted from its negligence. This argument is without merit. *See Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1233 (D.C.1988); *Lacy v. District of Columbia*, 408 A.2d 985, 991 (D.C.1979). *See also Sentilles v. Inter–Caribbean Shipping Corp.*, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959); *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir.1966). Although the accident apparently accounted for only a small fraction of Girolami's overall disabled condition, the jury could properly find that it precipitated his inability to work and thus proximately

caused the loss for which damages were awarded.

2. Mrs. Girolami claimed loss of consortium.

3. Dr. Lurito did not testify, as Tompkins contends, that the work-life expectancy table reflects the expected work life of only healthy white males. On the contrary, he testified that the table reflects the expected work life of the average white male, "Whatever the health [the] average white male is in."

United States Court of Appeals for the District of Columbia Circuit decided prior to February 1, 1971, are binding on divisions of this court. Only the *en banc* court can decline to follow such decisions). In *Kanelos v. Kettler*, 132 U.S.App.D.C. 133, 406 F.2d 951 (1968), a case which involved the life expectancy of a diabetic plaintiff, the Court of Appeals instructed the trial court (that had refused to admit life expectancy tables into evidence, because the life expectancy of a diabetic is not the same as the life expectancy of a person in good health) to admit life expectancy tables into evidence, for:

> While we may assume that the validity of the medical fact stated by the judge [that the life expectancy of a diabetic is not the same as the life expectancy of a person in good health], we do not agree that fact warranted exclusion of the tables. Ill health or disease of the person whose life expectancy is in inquiry does not affect the admissibility of a standard mortality table, but only its weight in the particular application. *See* the cases collected in Annot. 116 A.L.R. 416–432 (1938). *Compare City–Wide Trucking Corp. v. Ford,* 113 U.S.App.D.C. 198, 203, 306 F.2d 805, 810 (1962).

*Id.* at 138, n. 30, 406 F.2d at 956, n. 30.

 We find no rational basis on which to distinguish life expectancy tables from work-life expectancy tables. The trial court did not err in admitting this testimony.[4]

*Affirmed.*

---

**4.** Tompkins extensively cross-examined Dr. Lurito, who readily testified that he had no basis to form an opinion on the actual work-life expectancy of this particular claimant. *The court properly instructed the jury that such tables are only one factor (not conclusive) for it to consider in connection with other evidence of the* claimant's "health, habits and activity" in determining this claimant's work-life expectancy. In light of this instruction and the arguments to the jury by each side, Tompkins claim, that Dr. Lurito's testimony usurped the function of the jury, is unpersuasive.